UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

DANIELLE PERKINS,

              Petitioner,

        V.

MICHAEL MCGINNIS,

              Respondent.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

05-CV-443
(DNH/VEB)

## I. INTRODUCTION

Petitioner Danielle Perkins, acting *pro se*, commenced this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is an inmate at the Elmira Correctional Facility. In 1998, he was convicted in a New York State court of five counts of First Degree Assault and one count of Second Degree Assault. Petitioner contends that his conviction was imposed in violation of his constitutional rights and should therefore be vacated.

This matter was referred to the undersigned by the Honorable Norman A. Mordue, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and is presently before this Court for a report and recommendation. (Docket No. 13).

## II. BACKGROUND

**A.    Facts**

The following factual summary is derived from the state court records. During the early morning hours of April 18, 1998, Petitioner was walking in the area of Lexington

Avenue and Central Avenue in Albany, New York.  Another individual, by the name of Avery Workman ("Workman"), was also walking in that area.  (T at 97).[1]  Workman was approached by a young, black male with braided hair, wearing a black leather jacket, black army pants, a black hooded sweatshirt, and a burgundy hat, who asked him for a "light." (T at 99, 103).  As Workman reached into his pocket to get a light, the man slashed his face with a razor, then ran away.  (T at 100, 298).  Workman went to the hospital, and while being treated spoke to the police and described the individual, later identified as Petitioner, who slashed him.  (T at 101, 103, 277).

Meanwhile, another individual, 62 year old Carl Becker ("Becker"), was also walking in that area.  He was on his way to the bus stop headed to work. (T at 137).  Petitioner approached Becker, put his arm around him and stated "Hi, I know you, you're from First Street" while cutting Becker's back.  (T at 140-42).  Thereafter, Becker gave a description of the incident and Petitioner to the police.  (T at 144).

One other person, Rodney Davis, was also in that area on April 18, 1998 at around 6:00a.m. in the morning and he also encountered Petitioner.  (T at 218).  Davis and his girlfriend were headed to breakfast when they stopped at a friend's house so Davis's girlfriend could pick up some of her belongings.  When they stopped, they saw Petitioner and said hello.  Davis was familiar with Petitioner and his girlfriend knew him and spoke to him. (T at 221).  While his girlfriend went inside the house, Davis waited out front.  Davis does not remember what happened after that point, because Petitioner smashed Davis's skull with a brick and then slashed his face.  (T at 223-25).

---

[1]References preceded by "T" are to the transcript pages of Petitioner's trial.

Thereafter, a search warrant was issued for Petitioner's residence and the police found the clothing described by the victims.  (T at 251-52).  Workman identified Petitioner as his attacker, and on April 21, 1998, Petitioner was arrested.  (T at 133, 241).

On April 24, 1998, an Albany County Grand Jury returned a nine (9) count indictment, which charged Petitioner with three counts of Assault in the First Degree, in violation of New York Penal Law ("NYPL") §120.10(1)[2]; two counts of Assault in the First Degree, in violation of NYPL §120.10(3); two counts of Assault in the First Degree, in violation of NYPL§120.10(2); one count of Assault in the Second Degree, in violation of NYPL §120.05(2); and one count of Attempted Murder in the Second Degree, in violation of NYPL §110.00, as further defined by §125.25(1).

### B.      State Trial Court Proceedings

The Honorable Thomas A. Breslin, Albany County Court Judge, presided over Petitioner's trial proceedings.  The trial began on August 31, 1998 and concluded on September 1, 1998. Petitioner was represented by Eugene Grenz, Esq.  At the conclusion of the trial, the jury found Petitioner guilty of five counts of Assault in the First Degree (with respect to Workman and Davis), one count of Assault in the Second Degree (with respect to Becker).  (T at 540-43).  Petitioner was acquitted of one count of Assault in the First Degree.  (T at 541).  Lastly, the Attempted Murder count, with respect to Rodney Davis, was submitted to the jury in the alternative and, in accordance with the court's instructions[3],

---

[2]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[3]Petitioner was charged in the seventh count of the indictment with Assault in the First Degree under circumstances evincing a depraved indifference to human life with respect to the assault on Rodney Davis.  In the eighth count of the indictment, Petitioner was also charged, in the alternative, with Attempted

the jury never voted on that count after reaching a determination of guilt on the alternative count of Assault in the First Degree. (T at 510, 543).

On October 15, 1998, Petitioner was sentenced to twelve and one-half (12 ½ ) years to twenty-five (25) years for each of his two convictions of Assault in the First Degree with respect to Avery Workman (to run concurrent to each other), three (3) to six (6) years for his conviction of Assault in the Second Degree with respect to Carl Becker (to run consecutively to the first two sentences with respect to Avery Workman), twelve and one-half (12 ½) years to twenty-five (25) years for his conviction of Assault in the First Degree with respect to Rodney Davis (to run consecutively to his other sentences), twelve and one-half (12 ½) years to twenty-five (25) years for his conviction of Assault in the First Degree with intent to disfigure Rodney Davis (to run concurrent to his other sentence with respect to Rodney Davis, but consecutive to the other sentences imposed), and lastly, twelve and one-half (12 ½) years to twenty-five (25) years for his conviction of Assault in the First Degree, depraved indifference to the human life of Rodney Davis (to run concurrent to the other sentences with respect Rodney Davis, but consecutive to the other sentences imposed) . (S at 9-12).[4] Therefore, Petitioner's aggregate sentence was twenty-eight (28) to fifty-six (56) years.

**C.      State Appellate Proceedings**

---

Murder with respect to Rodney Davis for the same attack.  The trial court instructed the jury that they could find Petitioner not guilty of both of those counts, or guilty of one or the other, but that they could not find Petitioner guilty of both.  Therefore, because they found Petitioner guilty of the seventh count, they did not vote on the eighth count of Attempted Murder.  (T at 510).

[4]References preceded by "S" are to the transcript pages of Petitioner's sentencing proceedings.

Petitioner, represented by Theresa M. Suozzi, Esq., appealed his conviction to the Appellate Division, Third Department, of the New York State Supreme Court.  Petitioner asserted three arguments before the Appellate Division: (1) the prosecution's violation of the trial court's <u>Sandoval/ Ventimiglia</u>[5] decision denied Petitioner due process and a fair trial; (2) the verdict was based on insufficient evidence; and (3) the sentence imposed was harsh and excessive.

In a decision issued on March 4, 2004, the Appellate Division affirmed Petitioner's conviction.  <u>People v.Perkins</u>, 5 A.D.3d 801, 772 N.Y.S.2d 750 (3d Dep't 2004).  Petitioner's application for leave to appeal to the Court of Appeals was denied on October 22, 2004. <u>People v.Perkins</u>, 3 N.Y.3d 741, 786 N.Y.S.2d 821(2004).

## D.  Federal Habeas Corpus Proceedings

Petitioner, proceeding *pro se*, commenced this action on April 11, 2005, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1).  In his Petition, Petitioner asserts two grounds for habeas relief: (1) the prosecution intentionally violated the trial court's <u>Sandoval</u>/<u>Ventimiglia</u> ruling, depriving him of due process and a fair trial; and (2) the evidence was insufficient to establish his guilt.  (Docket No. 1). Thereafter, Respondent filed submissions in opposition.  (Docket Nos. 7. 8).

For the reasons that follow, this Court finds the Petition to be without merit and

---

[5]A hearing is held pursuant to <u>People v. Sandoval</u>, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), to determine the extent to which Petitioner, should he decide to testify, could be cross-examined regarding prior crimes and bad acts bearing on his credibility, veracity, or honesty. A hearing pursuant to <u>People v. Ventimiglia</u>, 52 N.Y.2d 350 (1981) is held to determine whether to admit evidence of uncharged crimes after a balancing of the prejudicial impact of the evidence against its probative value.

recommends it be DENIED.

## III. DISCUSSION

**A.    Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim."  Sellan, 261 F.3d at 313 (quotation omitted).  The Second Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d

Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>LanFranco v. Murray</u>, 313 F.3d 112, 117 (2d Cir. 2002). A presumption of correctness applies to findings by both state trial and appellate courts. <u>Galarza v. Keane</u>, 252 F.3d 630, 635 (2d Cir. 2001); <u>Whitake</u>r, 123 F.3d at 715 n.1.

In <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law. A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." <u>Id</u>.

A state court decision involves "an unreasonable application of" Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." <u>Id</u>.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." <u>Id</u>. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.     Petitioner's Claims**

7

As set forth above, Petitioner asserts two claims for habeas relief.  This Court will address each claim in turn.

### 1.    Alleged Violation of *Sandoval/Ventimiglia* Ruling

In Petitioner's first ground for habeas relief, he asserts that the prosecution intentionally violated the trial court's <u>Sandoval</u> ruling.  Specifically, Petitioner contends that the prosecution violated the <u>Sandoval</u>[6] ruling when it cross-examined his mother, an alibi witness.  Petitioner further contends that the trial court contradicted its own ruling when it allowed the prosecution to reference prior bad acts during cross-examination.

The Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.' " <u>Estelle v. McGuire</u>, 502 U.S. at 68 (quoting <u>Lewis v. Jeffers</u>, 497 U.S. at 780 and citing <u>Pulley v. Harris</u>, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.")).  It is not the province of a federal court, sitting in habeas review, to reexamine state-court determinations on state-law questions.  <u>Id</u>.  Rather, a habeas court is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Id.</u> (citing, inter alia, <u>Rose v. Hodges</u>, 423 U.S. 19, 21 (1975) ("A necessary predicate for the granting of federal habeas relief to respondents is a determination by the federal court that their custody violates the Constitution, laws, or treaties of the United States [.]") ( per curiam ) (citations omitted)); <u>see also</u> 28 U.S.C. § 2254(a).

The purpose of a hearing pursuant to <u>People v. Sandoval</u> is to determine the extent

---

[6]Because the prosecution never introduced evidence of Petitioner's prior bad acts in their direct case, this claim does not concern the <u>Ventimiglia</u> ruling, but rather the <u>Sandoval</u> ruling, which deals with evidence brought out on cross-examination.

to which a defendant may be cross-examined concerning past crimes and misconduct. At the <u>Sandoval</u> hearing, the prosecutor addressed Petitioner's two previous criminal convictions, as well as several other prior bad acts. (SH[7] at 6-7, 31-38).   Many of the prior bad acts involved Petitioner throwing rocks or pieces of blacktop at either a teacher, student, elderly woman, or other adult. (SH at 8-11, 31-38).   Petitioner was adjudicated a juvenile delinquent, sentenced to one year probation, and placed in an alternative school known as Berkshire Farms.  (SH 8, 11-15).

The trial court ruled that, in the event of Petitioner's testimony, the prosecutor could cross-examine Petitioner with the fact that he was previously charged with possession of a loaded .38 Smith & Wesson.  (SH at 33).  The trial court precluded the prosecutor from cross-examining Petitioner with respect to an incident where Petitioner allegedly threw a rock or brick because the incident was too similar to an allegation in the present indictment. (SH at 34).   Petitioner consented to, and the court preliminarily ruled that if Petitioner testified, he could be questioned about a robbery and smashed window incident he was involved in.  (SH at 35).  The court also preliminarily ruled that cross-examination of prior incidents where Petitioner struck his teachers and a teacher's aide could take place .  (SH at 36-37). Petitioner decided not testify at trial.

However, during cross-examination of Petitioner's mother, an alibi witness, the prosecutor tried to establish that she was the type of person who tried to protect Petitioner from the consequences of his actions and would excuse his behavior.  (T at 394-95). Specifically, the prosecutor began asking questions concerning attempts by Petitioner's

---

[7]References preceded by "SH" are to the transcript pages of Petitioner's Sandoval Hearing.

mother to protect Petitioner from the consequences of failing to comply with the court-ordered alternative school program.

Petitioner's trial counsel objected to the relevance of the prosecutor's questions and a sidebar conference was held.  (T at 395).  Petitioner's counsel stated that he feared the prosecutor was getting into Petitioner's prior bad acts and violating the <u>Sandoval</u> ruling.  (T at 395-96).  However, the trial court stated that the line of questioning had "nothing to do with his bad acts.  This has to do with what she's willing to do for her son when times get tough." (T at 396) The court went on to state that "this goes to her credibility."  (T at 398).

Following the sidebar, the prosecutor proceeded to question Petitioner's mother with respect to her inclination to protect her son from the consequences of his actions.  (T at 400).  The prosecutor then asked to approach for another sidebar, explaining that she wanted to question Petitioner's mother about his leaving the Berkshire Farms school without permission and a warrant being issued for his arrest as a result of that absence.  The prosecutor wanted to inquire about Petitioner's mother contacting the court and stating that she was not sending Petitioner back to Berkshire Farms.  (T at 402).  The court allowed inquiry, as it related to Petitioner's mother's credibility.  (T at 403-04).

Thereafter, the prosecutor began questioning Petitioner's mother about "an incident involving Danielle throwing a chunk of blacktop." (T at 412).   The trial court interrupted and Petitioner's counsel then objected and the objection was immediately sustained and followed by a limiting instruction.  (<u>Id.</u>).

Petitioner raised these claims before the Appellate Division on direct appeal. In discussing the Berkshire Farms claim, the appeals court found that "[t]he introduction of this evidence was limited to the issue of the witness's credibility. Moreover, defendant's conduct

in being away from the school without excuse was of little consequence and not so prejudicial as to deprive him of due process or a fair trial." People v. Perkins, 5 A.D.3d at 803.

With respect to the improper reference to Petitioner throwing the blacktop, the Appellate Division found that "County Court immediately intervened and defense counsel objected, following which the court sustained the objection and gave specific limiting instructions to ameliorate any potential prejudice to defendant. Under these circumstances, we find no merit to defendant's assertion that this alleged violation deprived him of due process or his right to a fair trial." Id.

### i.   Berkshire Farms Issue

In New York, although a defendant who testifies is protected under People v. Sandoval, 34 N.Y.2d 371 (1974), from being cross-examined about prior convictions or bad acts that would be unfairly prejudicial, the Sandoval protections are accorded only to the defendant should he take the stand; Sandoval does not apply to testimony by the defendant's witnesses. See People v. Ocasio, 47 N . Y.2d 55, 59 (1979) ("We take the opportunity presented by this case to make explicit that [the Sandoval procedure] is inapplicable to witnesses who are not defendants.");see also, Price v. Senkowski, No. 93-CV-1181 FHS RWS, 1996 WL 631731 (N.D.N.Y. Oct. 21, 1996)(stating the same). A trial court's ruling regarding the scope of the prosecutor's cross-examination of a defense witness regarding prior bad acts in which the defendant allegedly was involved is a matter of discretion for the trial court. See id. at 59-60.

As set forth above, Petitioner did not testify at trial, rather, his mother testified as an alibi witness. The trial court only allowed the prosecution to question Petitioner's mother with

respect to the Berkshire Farms incident as it related to her credibility.  Implicit in the trial court's ruling was its conclusion that her history of protective behavior towards Petitioner permits the logical inference that she may be testifying falsely as to his alibi to protect him yet again**.** The Appellate Division's decision that this did not constitute an abuse of the trial court's discretion and there does not appear to be any indication that the Appellate Division's ruling in this regard was erroneous.

In short, there was no error of state law, let alone any error of federal constitutional magnitude.  See Price, 1996 WL 631731, at *2 (denying habeas relief where trial court ruled that the prosecution would be able to impeach the credibility of a defense witness with an indictment for similar criminal conduct to which the defendant was a party; no error of state law since Sandoval protection is accorded only to the defendant should he take the stand, not to the defendant's witness); see also Kavazanjian v. Breslin, No. 05-CV-5041, 2006 WL 3717100, at *4 (E.D.N.Y. Dec. 15, 2006) (holding that "use of . . .  prior convictions and other bad acts as impeachment was entirely proper because they were probative of credibility and not unduly prejudicial").

### ii.    Petitioner's Throwing of Blacktop

With respect to the prosecution's question relating to an incident where Petitioner threw a chunk of blacktop, there is no question that the prosecutor's question was contrary to the trial court's ruling.  However, as noted above, the trial court immediately interrupted the question, Petitioner's counsel's objection was sustained and a limiting instruction was given to the jury.

The instructions are significant because as the Supreme Court has held consistently,

jurors are generally presumed to follow their instructions.  Smith v. Texas, 543 U.S. 37, 46, 125 S.Ct. 400, 160 L.Ed.2d 303 (2004) (quoting Penry v. Johnson, 532 U.S. 782, 799, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001)); see also Greer v. Miller, 483 U.S. 756, 766 n. 8, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) ("We normally presume that a jury will follow an instruction to disregard inadmissible evidence ..., unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions."); Richardson v. Marsh, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (stating that "juries are presumed to follow ... instructions"); Shotwell Mfg. Co. v. United States, 371 U.S. 341, 367, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it.").

In this Circuit, in cases where evidence is alleged to have been erroneously introduced, "[l]imiting instructions have been found to militate against a finding of constitutional error." Yapor v. Mazzuca, 2005 WL 894918, at * 15 (S.D.N.Y. Apr.19, 2005) (citing Peakes v. Spitzer, 04 Civ. 1342, 2004 WL 1366056, at *18 n. 29 (S.D.N.Y. June 16, 2004)) ("The jury is presumed to obey a court's curative instruction."); Cruz v. Greiner, 98 Civ. 7839, 1999 WL 1043961 at *31 & n. 26 (S.D.N.Y. Nov. 17, 1999) (rejecting petitioner's argument that "if you throw a skunk into the jury box, you can't instruct the jury not to smell it" and finding that the court's instruction to disregard inadmissible evidence rendered harmless any prosecutorial misconduct) (citations omitted). Here, the Court has no reason to believe that the jury in this case was unable to follow the instructions, Greer, 483 U.S. at 766 n. 8, 107 S.Ct. 3102.

Moreover, given the strength of the prosecution's proof, which is discussed in greater detail below, the prosecutor's question, while indisputably improper, was a brief and isolated

13

incident that was not sufficiently serious to deprive Petitioner of a fundamentally fair trial. Taylor v. Curry, 708 F.2d 886, 890-91 (2d Cir.1983) ("[E]videntiary rulings do not automatically rise to the level of constitutional error sufficient to warrant the issuance of a writ of habeas corpus. Rather, the writ would issue *only* where a petitioner can show that the error deprived her of a fundamentally fair trial.") (emphasis original); see also Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (holding that evidentiary error only justifies habeas relief where error had "substantial and injurious effect or influence in determining the jury's verdict").

This Court finds that the Appellate Division's decision as to these claims did not involve an unreasonable application of clearly established Federal law; nor was it based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Accordingly, Petitioner's first claim should be DISMISSED in its entirety.

### 2.    Sufficiency of the Evidence

In Petitioner's second claim for habeas relief, he asserts that there was insufficient evidence to convict him of Assault in the First Degree or any lesser charge and therefore the verdict should be vacated.  Specifically, he asserts that the identification of one of the victims, Avery Workman, was questionable, given the fact that Workman had been drinking and using drugs the day before.  Petitioner argues that, given the fact the other victims could not identify him, there was no weapon ever found, no motive established, and he had alibi witnesses testify on his behalf, there was insufficient evidence to convict him.

A habeas petitioner challenging the sufficiency of the evidence bears "a very heavy

14

burden." Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir.2002) (quotation marks omitted);

Einaugler v. Supreme Court of New York, 109 F.3d 836, 840 (2d Cir.1997) (quotation marks

omitted).  A habeas challenge to the sufficiency of the evidence "does not require a court

to 'ask itself whether it believes that the evidence at the trial established guilt beyond a

reasonable doubt.'" Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781 (1979)

(quoting Woodby v. INS, 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966)).  Rather,

"the relevant question is whether, after viewing the evidence in the light most favorable to

the prosecution, any rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Id. (emphasis in original).

       Thus, a habeas court must uphold a conviction unless, upon the record evidence

adduced at trial, no rational trier of fact could have found that the prosecution established

the defendant's guilt beyond a reasonable doubt. See id.; accord Ponnapula, 297 F.3d at

179 ("[W]e review the evidence in the light most favorable to the State and [hold that] the

applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of

guilt beyond a reasonable doubt based on the evidence adduced at trial.").

       With respect to the Avery Workman's identification of Petitioner, Workman provided

a detailed description to the police after the assault, as well as identifying Petitioner from a

photograph.  Petitioner asserts that Workman's description was questionable because of

his use of drugs and alcohol the evening before the assault.  However, the police officer who

questioned Workman at the hospital testified that Workman was "very coherent, [and] able

to answer any question [he] had for him, [Workman] was able to give [the officer] a detailed

description of the person that had assaulted him."  (T at 279).

       Petitioner is merely challenging the credibility of a witness, which is a matter within

15

the province of the factfinder; a court reviewing claims of sufficiency of the evidence may not revisit or second-guess a factfinder's determinations about witness credibility. See, e.g., United States v. Arena, 180 F.3d 380, 391 (2d Cir.1999) (in a challenge to the sufficiency of the evidence, the court is to "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility"); accord United States v. Parkes, 497 F.3d 220, 223 n. 1 (2d Cir.2007).  As such, the jury had the opportunity to hear the testimony of the victim, Workman, and the testimony of the police officer who took his statement and make a determination as to each of their credibility.   This determination may not be disturbed on habeas review.  See Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir.1994) (A "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (quoting Jackson v. Virginia, 443 U.S. 307, 326, 99 S.Ct. 2781 (1979)).

With respect to the specific elements needed to prove first degree assault; according to NYPL §120.10, "[a] person is guilty of assault in the first degree when:

> 1. With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument; or
> 2. With intent to disfigure another person seriously and permanently, or to destroy, amputate or disable permanently a member or organ of his body, he causes such injury to such person or to a third person; or
> 3. Under circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person."

NYPL §120.10(1),(2)&(3).

16

In this case, each victim had wounds that indicated the use of a razor blade as the weapon. All three victims were in approximately a three block radius from each other, and each attack took place within minutes of the others. As the Appellate Division stated "[c]learly, the evidence that defendant employed a razor to inflict the various wounds upon the victims supports the conclusion that defendant formed the requisite intent to commit each of the crimes of which he was convicted." People v. Perkins, 5 A.D.3d at 804.

Further, with respect to the attack on Rodney Davis, and the use of a brick to cause a skull fracture, the Appellate Division stated that "[t]his injury, caused in this manner, is evidence of a depraved indifference to human life constituting reckless conduct which is imminently dangerous and creates a grave risk of death." Id. Under the circumstances, and viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found Petitioner guilty of assault beyond a reasonable doubt. See United States v. Sureff, 15 F.3d 225, 228 (2d Cir.1994) (recognizing that "guilt beyond a reasonable doubt may be established entirely by circumstantial evidence"); United States v. Strauss, 999 F.2d 692,696 (2d Cir.1993) ("[A] conviction may be based upon circumstantial evidence and inferences based upon the evidence."); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996) ("Guilt beyond a reasonable doubt may be established entirely by circumstantial evidence, and this evidence must not be reviewed piecemeal, but rather as a whole.").

Accordingly, Petitioner's second claim with respect to the sufficiency of the evidence should be DISMISSED.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Danielle Perkins' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  <u>See</u> 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

DATED:      April 29 , 2008

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and**

18

**72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

April 29 , 2008

Victor E. Bianchini
United States Magistrate Judge